

Attorneys for Plaintiffs:
**Barry Dunn, CA State Bar #151340**
Franklin D. Azar & Associates, P.C.
14426 East Evans Ave.
Aurora, Colorado 80014
(p) 303-757-3300
(f) 303-757-3206
dunnb@fdazar.com

BY FAX

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

Civil Action No.

JEFFREY JOHNSON, JENNIFER RIESE,
and SHAUN SIMMONS, individually
and on behalf of all similarly situated,

**EMC**

**CV 09 3596**

Plaintiffs,

vs.

HEWLETT-PACKARD COMPANY

Defendant.

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Jeffrey Johnson, Jennifer Riese, and Shaun Simmons through undersigned counsel, for their Complaint against Defendant Hewlett Packard Company ("HP" or "Defendant"), allege the following upon information and belief, except as to the allegations that pertain to the named Plaintiffs and their counsel, which are based upon personal knowledge:

Complaint

## I. NATURE OF ACTION

1. Plaintiffs bring this action on behalf of themselves, as a class action and on behalf of those similarly situated, against HP for engaging in a systematic scheme against HP employees who were entitled to commissions and/or bonuses and other compensation. This scheme involved, inter alia, failing to record, track, and pay employees commissions earned on sales made and failing to properly credit employees for sales made so that employees' bonuses were reduced. As a result of HP's systematic failure to properly pay their employees, Defendant has violated common laws as described more particularly below.

## II. PARTIES

2. Jeffrey Johnson, Jennifer Riese, and Shaun Simmons (collectively, "Named Plaintiffs") are individuals residing in Colorado. At all times pertinent to the allegations in this complaint, they resided in Colorado. Named Plaintiffs held sales positions with HP during the Class Period and were not paid full commissions and bonuses due to HP's systematic failure.

3. HP is a California corporation doing business all across the United States. HP's principal place of business is in Palo Alto, California.

## III. JURISDICTION

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. 1332(d).

5. The amount in controversy exceeds $5,000,000.

6. HP owes each sales representative employed by HP – as described in more detail below – at least tens of thousands of dollars in earned commissions and other

compensation; the number of employees HP failed to compensate multiplied by the amount owed to each employee far exceeds $5,000,000.

7. The parties are diverse. HP transacts business in California and its principle place of business is in California. Named Plaintiffs are Colorado citizens. The putative class is comprised of citizens from multiple states including, but not limited to, Arkansas, New Mexico, California and Colorado.

8. Less than two-thirds of all members of the Class are California citizens.

9. Venue is proper in this Court because HP's principle place of business is in Northern California, thus most of the relevant information and witnesses for HP are located in Northern California.

## IV. GENERAL ALLEGATIONS

10. In December 2002, Shaun Simmons began employment with HP as a sales representative. Mr. Simmons worked for HP until October 13, 2008.

11. Mr. Simmons worked in commercial sales where his territory included Alabama and the panhandle of Florida. Mr. Simmons transferred to TSG in 2003 where he took responsibility for the IBM GS/HP relationship.

12. Mr. Simmons sold $12 billion each year to IBM. Each year he worked for HP, Mr. Simmons exceeded his quota and earned significant commissions.

13. HP failed to account for all of Mr. Simmons' sales and failed to pay him commissions and accurate bonuses.

14. In one instance, Mr. Simmons exceeded his quota by 1,000%, which earned him a bonus of at least $30,000. HP informed Mr. Simmons it would not pay him that amount

Complaint 3

and, instead, HP arbitrarily reduced the amount by which he exceeded his quota to 110% and paid him $500.

15. Jeffrey Johnson began working for HP on February 22, 2005. He ended his employment with HP on August 1, 2008.

16. Mr. Johnson worked as a sales representative for HP. He worked as an inside sales representative; he worked for the Higher Education sales department/team; and he worked for the Pennsylvania/New Jersey higher education group.

17. Mr. Johnson sold millions of dollars worth of equipment and services each year to HP customers.

18. HP failed to account for all of Mr. Johnson's sales and failed to pay him commissions and accurate bonuses.

19. Jennifer Riese worked for HP from April 1, 2002 through February 27, 2009.

20. Ms. Riese worked as an inside sales representative for the small and medium business division; Ms. Riese moved to the Public Sector in November 2005 selling to public entities such as school districts in a five-state territory; Ms. Riese transferred to the Partner Solution organization in November 2007.

21. Though Ms. Riese sold millions of dollars of equipment and services to Agilysys on behalf of HP, HP failed to accurately track Ms. Riese's sales and properly compensate her for the same.

22. HP failed to account for all of Ms. Riese's sales and failed to pay her commissions and accurate bonuses.

23. In their positions as sales representatives, each Named Plaintiff and members of the class were to receive a salary from HP. In addition, HP agreed to pay each Named Plaintiff and member of the class commissions on sales and compensation including bonuses if they exceeded certain quotas established by HP.

24. Pursuant to their employment guidelines and the rules and procedures that governed their employment, HP was to pay the Named Plaintiffs and members of the class commissions based on an objective formula. All Named Plaintiffs and members of the class were eligible, according to HP's own criteria, to receive such commissions, which HP dubbed "Target Incentive Amount" or "TIA".

25. Named Plaintiffs and members of the class depended on receiving credit for and being paid for sales they made to supplement their salaries and to be eligible for additional HP bonus programs.

26. HP utilized a computer program named Omega to record, "track", and calculate each Plaintiff's commission on each sale. In some cases, Named Plaintiffs and members of the class submitted sales data to HP and HP would then enter the data into the Omega program.

27. HP denied Named Plaintiffs or members of the class key information regarding their commissions. HP cut Named Plaintiffs and class members their checks each pay period without a break down of which amounts were attributable to which sales.

28. For sales valued less than $10,000, HP required Named Plaintiffs and class members to manually submit a form to obtain credit for a sale.

29. Named Plaintiffs and class members denied key information on when or if commissions associated with those "manual" sales were paid and, just as importantly, whether those sales were being credited for purposes of HP's other bonus programs.

30. Similarly, other types of sales required manual submission, including sales for indirect renewal business for Federal customers (i.e., the U.S. Army) and mid-market sales. All sales that required manual submission to obtain credit left Named Plaintiffs and the class without important information as to when or if they would ever receive such credit.

31. Upon information and belief, HP failed to give Named Plaintiffs and the class credit for sales submitted manually and failed to pay Plaintiffs commission for such sales.

32. Credit for sales was dependent on the correct operation of HP's order management system (Omega).

33. HP informed Named Plaintiffs and the class that sales were credited usually between one and six weeks after equipment was shipped to the customer or the order date.

34. Sales were credited on a quarterly basis and if any shipment occurred after a quarter closed (even if the sale occurred before the quarter closed), Named Plaintiffs were not credited until the next quarter.

35. HP has admitted the Omega system has malfunctioned and caused problems with paying commissions to employees and that such problems are chronic and persistent.

36. HP's systematic failure to pay Named Plaintiffs and the class they seek to represent commissions, bonuses and other compensation earned, due and payable, and HP's failure to properly credit for sales made caused damages in an amount to be proven at trial.

37. All conditions precedent necessary to bring the claims asserted in this Complaint have been met.

## CLASS ALLEGATIONS

38. Named Plaintiffs bring this case as a class action on behalf of a Class consisting of:

**all current and former employees of HP who sold equipment or services on behalf of HP and were entitled to compensation, including commission and/or bonus payments from HP.**

39. Named Plaintiffs believe there are over 50,000 current and former employees in the Class. Given Defendant's massive size and the systematic nature of Defendant's failure to comply with the law, the members of the Class are so numerous that joinder of all members is impractical.

40. Named Plaintiffs' claims are typical of the claims of the members of the Class because they were sales representatives for HP who, like the other members of the Class, sustained damages arising out of the Defendant's wage abuse campaign, which includes, but is not limited to, the following: failing to properly compensate Plaintiffs and Class members for their work by failing to pay earned commissions; failing to accurately pay them earned bonuses; and failing to properly compensate them for sales made.

41. Named Plaintiffs will fairly and adequately protect the interests of the Class.

42. Named Plaintiffs have no conflict of interest with any member of the Class.

43. Named Plaintiffs have retained counsel competent and experienced in complex, class action litigation.

44. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.

45. Among the questions of law and fact common to Plaintiffs and the Class members are:

a. Whether Defendant engaged in a pattern and or practice of failing to properly compensate Plaintiffs and the Class members for their work, including but not limited to their earned compensation, including commissions and bonuses;

b. Whether Defendant engaged in a pattern and/or practice of failing to accurately track direct and indirect sales made by Plaintiffs and the Class members;

c. Whether Defendant engaged in a pattern and/or practice of discouraging the Plaintiffs and the Class members from trying to collect earned compensation, including commissions and bonuses;

d. Whether Defendant engaged in a pattern and/or practice of threatening Plaintiffs and the Class members with discharge, demotion, discrimination or otherwise intimidating them if they did try to collect earned compensation, including commissions and bonuses;

e. Whether Defendant failed to properly compensate employees for compensation, including commissions and bonuses required by Defendant's policies, practices and procedures, applicable law, and Defendant's contracts with and promises to its employees;

f.      Whether Defendant failed to keep true and accurate records for all sales made by their sales representatives employees and/or altered sales records;

g.      Whether Defendant failed to pay Plaintiffs and the Class members for the work they performed;

h.      Whether Defendant converted the property of Plaintiffs and the Class members;

i.      Whether Defendant has been unjustly enriched;

j.      Whether Defendant's executives have been unjustly enriched;

k.      Whether Defendant's breached their contracts with Plaintiffs and the Class members and/or failed to honor their promises to Named Plaintiffs and the class members;

l.      Whether Plaintiffs are entitled to compensation for sales made and bonuses earned;

u.      Whether Plaintiffs are entitled to injunctive relief; and

v.      The nature and extent of class-wide injury and the measure of damages for the injury.

46.      Class action treatment is superior to any alternatives to ensure the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail.

47. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy.

48. The Class members are readily identifiable from Defendant's records.

49. California law requires Defendant to keep payroll records for all employees for at least two years.

50. Defendant's actions are generally applicable to the entire Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

51. Prosecution of separate actions by individual members of the Class creates the risk of inconsistent or varying adjudications of the issues presented herein, which, in turn, would establish incompatible standards of conduct for Defendant.

52. Because joinder of all members is impractical, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Furthermore, the amounts at stake for many of the Class members, while substantial, are insufficient to enable them to maintain separate suits against Defendant.

53. Defendant's wrongful and unlawful conduct has been widespread, recurring and uniform at all of Defendant's locations. Defendant knew or should have known that its sales representatives, including Plaintiffs and the Class, were not being paid for all compensation, including commissions and bonuses earned, due and payable as required by law.

54. Absent a class action, Defendant will likely continue its wrongdoing resulting in further damage to Named Plaintiffs and the Class.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract)

55. Plaintiffs incorporates all prior allegations.

56. Pursuant to the terms of the Plaintiffs' employment with HP and HP's own policies, practices, and procedures, Plaintiffs agreed to sell HP services and produces and HP agreed to compensate Plaintiffs for their work, including paying Plaintiffs commissions on sales and to pay Plaintiffs a bonus if Plaintiffs periodically met certain targets established by HP.

57. Accordingly, the parties entered into a binding, enforceable, and unambiguous contract for which there was adequate consideration.

58. Plaintiffs sold HP services and equipment, but HP failed to pay Plaintiffs commissions on certain sales and failed to credit Plaintiffs for certain sales, thus precluding Plaintiffs from receiving bonuses because HP prevented Plaintiffs from reaching certain sales targets set by HP.

59. HP's failures constitute a breach of contract.

60. As a result of HP's breach, Plaintiffs were damaged in an amount to be determined at trial including, but not limited to, compensation including commissions and bonuses owed.

## SECOND CLAIM FOR RELIEF
### (In the Alternative to the First Claim for Relief – Unjust Enrichment)

61. Plaintiffs incorporate and re-allege paragraphs 1- 60 as if fully set forth herein.

Complaint                               11

62. Plaintiffs agreed to sell HP's products and services in exchange for a salary, commissions, and bonuses.

63. Despite Plaintiffs' requests and demands, HP has failed and refused to pay for the benefits it received from Plaintiffs, namely sales revenues generated by Plaintiffs.

64. HP would be unjustly enriched, and Plaintiffs inequitably injured, if HP were not required to pay a reasonable sum for these benefits received from Plaintiffs.

65. HP knows it is retaining a benefit to Plaintiffs' detriment under circumstances that make HP's retention unjust.

66. As a result of HP's actions, Plaintiffs have been damaged in an amount to be determined at trial.

WHEREFORE, Named Plaintiffs respectfully request that the Court certify the class defined as "all current and former employees of HP who sold equipment or services on behalf of HP and were entitled to compensation, including commission and/or bonus payments from HP" and enter judgment in their favor, and against HP, enter an order finding HP liable to Plaintiffs and class members for all compensation, including commissions and bonuses earned, due and payable, but not paid, for Plaintiffs fees and costs, including expert and attorneys' fees, for pre- and post-judgment interest and for any other relief the Court deems just.

Respectfully submitted this 6th day of August, 2009.

**Barry Dunn, CA State Bar #151340**
Franklin D. Azar & Associates, P.C.
14426 East Evans Ave.
Aurora, Colorado 80014
(p) 303-757-3300
(f) 303-757-3206
dunnb@fdazar.com

Complaint 13