SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
TODD M. SCHNEIDER (SBN 158253)
tschneider@schneiderwallace.com
JOSHUA G. KONECKY (SBN182897)
jkonecky@schneiderwallace.com
LISA M. BOWMAN (SBN 253843)
lbowman@schneiderwallace.com
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105

GRADY SCHNEIDER, LLP
PETER B. SCHNEIDER
(*Pro Hac Vice Application to be filed*)
pschneider@gsnlaw.com
KEITH GRADY
(*Pro Hac Vice Application to be filed*)
kgrady@gsnlaw.com
1801 Congress Street, 4th Floor
Houston, Texas 77002
Tel: (713) 228-2200
Fax: (713) 228-2210

FRANKLIN D. AZAR & ASSOCIATES, P.C.
FRANKLIN D. AZAR (*Pro Hac Vice*)
azarf@fdazar.com
BARRY DUNN (SBN 151340)
dunnb@fdazar.com
NATHAN J. AXVIG (*Pro Hac Vice*)
axvign@fdazar.com
JASON B. WESOKY (*Pro Hac Vice*)
wesokyj@fdazar.com
TONYA MELNICHENKO (*Pro Hac Vice*)
melnichenkot@fdazar.com
MEGHAN MARTINEZ (*Pro Hac Vice*)
martinezm@fdazar.com
RICHARD BARKLEY (*Pro Hac Vice*)
barkleyr@fdazar.com
14426 East Evans Avenue
Aurora, Colorado 80014
Tel: (303) 757-3300
Fax: (303) 757-3206

Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

JEFFREY JOHNSON, JENNIFER RIESE, SHAUN SIMMONS, MICHAEL DEBEVER, and JAMES PURVIS, individually, and on behalf of others similarly situated,

      Plaintiffs,

  vs.

HEWLETT-PACKARD COMPANY,

      Defendant.

Case No. 3:09-cv-003596-CRB

**THIRD AMENDED COMPLAINT**
    **(1) BREACH OF CONTRACT/BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING;**
    **(2) UNJUST ENRICHMENT;**
    **(3) PROMISSORY ESTOPPEL;**
    **(4) VIOLATIONS OF CALIFORNIA LABOR CODE AND WAGE ORDERS;**
    **(5) VIOLATIONS OF THE CALIFORNIA UNFAIR BUSINESS PRACTICES ACT;**
    **(6) VIOLATION OF THE COLORADO WAGE CLAIM ACT;**
    **(7) ACCOUNTING**

**CLASS ACTION**

**TRIAL BY JURY DEMANDED**

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

Plaintiffs, Jeffrey Johnson, Jennifer Riese, Shaun Simmons, Michael DeBever, and James Purvis (collectively, the "Employees"), on behalf of themselves and others similarly situated (together, the "Class Members"), bring the following Third Amended Class Action Complaint against Defendant, Hewlett Packard, Inc. ("HP"):

## NATURE OF THE ACTION

1.     This class-action lawsuit arises out of HP's acknowledged failures over the past several years to record timely and accurately the sales of its equipment and services; and to calculate properly, and pay timely, the commissions and bonuses (together, "wages") owed to HP's sales representatives because of unrecorded sales.  HP's failures – which are violations of its contractual, common law, legal, and statutory  obligations – have resulted in the loss by HP's sales representatives of millions of dollars in wages.

2.     HP has protested that its failures are due to flaws with the computer software system – known as Omega – that records sales and calculate commissions.  (See, e.g., Ex. A.)  HP's equipment failures, however, do not excuse or justify its breaches and wrongdoing.  Moreover, HP's protestations ring hollow in light of (a) its history of failing or refusing to pay, and to pay timely, the full amount of commissions and bonuses earned by its sales representatives; (b) its decision to replace a system that functioned well with Omega; (c) its recognition of, and concomitant failure to correct, Omega's deficiencies; and (d) the economic benefit HP is receiving from the malfunctioning commission system.

3.     Accordingly, the Employees, on behalf of themselves and the Class Members, seek to enjoin HP from continuing its use of the malfunctioning Omega system unless and until HP can demonstrate to the satisfaction of the Employees, or alternatively, to the Court, that the flaws with Omega have been corrected and all sales are now being recorded timely and credited properly to the sales representatives.  Additionally, the Employees, again on behalf of themselves and the Class Members, seek to recover the wages owed to them and the damages incurred or suffered by them, including all recoverable damages, penalties, punitive damages, interest, attorney fees, and costs.  Finally, the Employees, on behalf of themselves and the Members, seek an order requiring HP to disgorge all economic benefits it received from its failures or refusals to record sales, and to

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

1   pay timely the correct amount of commissions or bonuses to the Employees and Members.

2   **PARTIES**

3       4.     Plaintiff, Jeffrey Johnson ("Johnson"), is an individual who resides in and is a citizen

4   of Colorado. Johnson worked as a sales representative for HP from February 22, 2005, until

5   August 1, 2008, for the Higher Education sales team and the Pennsylvania/New Jersey higher

6   education group. Johnson sold millions of dollars worth of equipment and services each year to HP

7   customers. HP failed to account for all of Johnson's sales and failed to pay him commissions that

8   he earned.  HP also failed to pay Johnson bonuses to which he was entitled.

9       5.     Plaintiff, Jennifer Riese ("Riese"), is an individual who resides in and is a citizen of

10   Colorado. Riese worked as a sales representative from April 1, 2002, through February 27, 2009.

11   From November 2005 to November 2007, Riese worked in the Public Sector group, selling HP

12   products and services to public entities such as school districts within a five-state territory.

13   Between November 2007 and February 27, 2009, Riese worked in the Partner Solution

14   organization.  Riese sold millions of dollars of equipment and services on behalf of HP. HP failed

15   to account for all of Riese's sales and failed to pay her commissions that she earned.  HP also

16   failed to pay Riese bonuses to which she was entitled.

17       6.     Plaintiff, Shaun Simmons ("Simmons"), is an individual who resides in and is a

18   citizen of Colorado.  Simmons worked as a sales representative for HP from December 2002 until

19   October 13, 2008. Simmons initially worked in commercial sales where his territory included

20   Alabama and the panhandle of Florida.  In 2003, Simmons transferred to HP's server and storage

21   group, and was responsible for HP's relationship with certain divisions of IBM. Simmons sold

22   millions of dollars of equipment and services on behalf of HP. HP failed to account for all of

23   Simmons' sales and failed to pay him commissions that he earned.  HP also failed to pay Simmons

24   bonuses to which he was entitled.

25       7.     Plaintiff, Michael DeBever ("DeBever"), is an individual who resides in and is a

26   citizen of California.  DeBever worked for HP in California from February 2006 to February 2009.

27   DeBever was a sales associate in the Commercial Business Systems Group, and sold millions of

28   dollars of storage, servers proliance servers, and software for HP.   HP failed to account for all of

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

1   DeBever's sales, and failed to pay him commissions that he earned.  HP also failed to pay DeBever

2   bonuses to which he was entitled.  Additionally, those commissions and bonuses that were paid to

3   DeBever were not paid timely.

4          8.      Plaintiff, James Purvis ("Purvis"), is an individual who resides in and is a citizen of

5   California.  Purvis was employed in California as a sales associate for HP from December 2004 to

6   July 2006, and from January 2007 to May 2008.  Purvis worked in the Personal Systems Group

7   selling desktops and laptops; and in the Technology Systems Group selling servers and storage.

8   Purvis sold millions of dollars of equipment, software, and services on behalf of HP, in territories

9   that included, at different times, New York City and Orange County.  HP failed to account for all

10  of Purvis' sales, and failed to pay him commissions that he earned.  HP also failed to pay Purvis

11  bonuses to which he was entitled.  Additionally, those commissions and bonuses that were paid to

12  Purvis were not paid timely.

13         9.      Defendant, Hewlett Packard, Inc., is an information technology company organized

14  and existing under the laws of the State of Delaware, with its principal place of business in Palo

15  Alto, California. Hewlett Packard, Inc. does business throughout the United States and the world.

16  Hewlett Packard, Inc. provides computer hardware, software, storage, networking, and services to

17  clients in, among other places, California and the United States.

18                              **JURISDICTION AND VENUE**

19         10.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332(d)(2).  The amount

20  in controversy exceeds $5,000,000.  The Employees estimate that there are approximately 50,000

21  sales representatives or former sales representatives in the proposed class.  HP, at a minimum,

22  owes each sales representative employed by HP tens of thousands of dollars in earned

23  commissions or bonuses.  Thus, the number of employees HP failed to compensate properly

24  multiplied by the amount owed to each employee far exceeds $5,000,000.

25         11.     Three of the Employees are Colorado citizens, and two are California citizens.  HP is

26  a Delaware corporation with its principal place of business in California.  HP also transacts

27  business in California.

28         12.     Class Members are citizens of States different from that of HP.  Less than two-thirds

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

1    of the Class Members are California citizens.

2      13. Venue is proper in this Court because HP's principal place of business is in this

3    district, and much of the relevant information and witnesses for HP are located in this district.

4      14. Venue is also proper in this Court because actions and omissions by HP that underlie

5    this lawsuit occurred in this district, and HP maintains business locations in this district and does

6    significant business here.

7    **FACTUAL ALLEGATIONS**

8      15. HP is one of the world's largest information technology companies. Since 2007, HP

9    has been the largest seller of personal computers and printers, and the second largest provider of

10   information technology services, in the world.  In 2009, HP was number nine on the Fortune 500,

11   with net revenues of $115 billion.

12     16. HP's wrongful and unlawful conduct has been widespread, recurring and uniform

13   across its locations.  HP's wrongful and unlawful conduct arises out of and is based on corporate

14   systems and polices developed at and administered from HP's headquarters in Northern California.

15   **A. The HP Employment Contract.**

16     17. As a large provider of information technology, HP has approximately 23,000 current

17   sales representatives.

18     18. HP's sales representatives, like other HP employees, are employed pursuant to a

19   unilateral, standardized employment contract in which HP promises to pay the Employees wages,

20   including commission and bonus wages, in return for their work.  The wage terms of this unilateral

21   contract – that is, the terms that delineate the wages to be paid to HP's sales representatives – are

22   contained in written handbooks, plans and policy documents that are created and standardized by

23   HP.

24     19. HP's compensation and employment contracts are the "HP Compensation

25   Documents."  These Documents include, but are not limited to:

26      a. HP Global Sales Compensation Handbook, including revision notes.

27      b. Americas Sales Compensation Operations U.S. & Canada Sales Compensation

28       Handbook.

c.  HP Sales Plan.

d.  Sales Letters.

e.  HP Global Sales Compensation Policy.

f.  Global Sales Compensation Delegation of Authority Policy.

g.  Americas SCO DOA [Sales Compensation Operations Delegation of Authority]
Policy.

20.     The unilateral contract offered by HP is the same or substantially similar for all sales representatives.  Although quotas may vary, the framework for the HP Sales Plans is designed to promote consistency across HP through the application of a consistent incentive design methodology.

21.     Under HP's standardized framework for compensating sales representatives, sales representatives are paid (a) a salary, (b) a commission on sales, and (c) bonuses/additional commissions for sales that exceed a quota.

22.     The wages that HP has offered to pay its sales representatives may also be found in oral statements by employees because HP has authorized them to explain, provide information, and make statements about compensation to sales representatives.  For example:

a.  Sales representatives are instructed in writing to contact their Sales
Compensation Operations ("SCO") Representatives for answers to questions
about the following types subjects:  Incentive pay questions, crediting
questions/concerns, roster questions, compensation plan questions, and Omega
online.  Because sales representatives are directed to contact SCO
Representatives, their statements to sales representatives about compensation are
part of the unilateral contract between HP and its sales representatives.

b.  Sales representatives are told in writing that they are expected to review HP's
Global Sales Compensation Policy and referenced materials and discuss any
questions with sales management.  By notifying sales representatives that they
are expected to discuss compensation questions with "sales management," HP
has acknowledged that statements by sales management are part of the unilateral

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

1   contract offered by HP to the sales representatives.

2   c.   Sales representatives are informed in writing that it is their responsibility to

3   review their Sales Letter and "escalate" any concerns to Sales Compensation

4   Operations (SCO) and to their manager within 30 days of Sales Letter

5   distribution.  By directing sales representatives to raise compensation concerns to

6   their managers and SCO, HP has, again, admitted that statements about

7   compensation by these employees become part of the unilateral contract.

8   **The HP Compensation System for Sales Representatives**

9   23.   Commissions were paid based on a representative's performance viewed in the

10   context of the representative's quota.  At the beginning of each half-year, sales representatives

11   were given their quota or "Target Incentive Amount" (TIA), which was a target commission based

12   on anticipated sales.  Thus, to give an example:

13   a.   A sales representative is given a semi-annual quota is $1,000,000.  This would

14   equal $166,666 per month.

15   b.   HP determines that the sales representative's semi-annual TIA, or projected

16   commission, will be $15,000.  Broken down into monthly amounts, in this

17   hypothetical, the monthly TIA would be $2,500.

18   c.   In the first month, perhaps the representative achieves twenty-five percent of the

19   monthly quota.  The representative's commission is thus twenty-five percent of

20   the monthly TIA, or $625.   If the sales representative reaches seventy percent of

21   the monthly quota, the commission for the month is seventy percent of its TIA,

22   or $1,750.  If the sales representative reaches 100 percent of the quota, the sales

23   representative is paid 100 percent of the monthly TIA, or $2,500.

24   d.   The percentage of monthly TIA that a sales representative is entitled to receive

25   varies at the bottom – if the representative is a poor performer; and at the top – if

26   the representative is a high performer.

27   e.   If the representative is a poor performer and sales are at 60 percent of monthly

28   quota or less, HP recaptures all of the commission the representative is entitled to

be paid for the month, and the sales representative receives no commission. Thus, if the representative's sales were only twenty-five percent of the monthly quota, the $625 he was to receive would be retained by HP, and the representative would receive no commission for the month.

f.  If the representative were an excellent performer, and his or her monthly sales exceed 100 percent of the monthly quota, but was less than 125 percent of the monthly quota, the representative's commission would be even higher, perhaps two-and-a-half times the percentage amount of the monthly sales. Thus, if a sales representative's sales were 120 percent of the applicable quota, the sales representative would receive a monthly commission of $7,599 (120 percent percentage of the TIA ($3,000) multiplied two and a half times.

g.  If the representative performed superbly, and the sales equaled or exceeded 125 percent of the TIA, the representative's commission would be higher still, perhaps as much as five times the percentage amount of the monthly sales. For instance, assume a school system decided to replace all of its existing computers, and ordered enough computers so that the sales representative sold, for the month, ten times the quota. The sales representative would receive a six figure commission for the month: $25,000 (ten times the quota) multiplied by five ($125,000).

**Impediments to Obtaining Full Wages**

24.  The Employees and Class Members, though entitled to significant commissions and bonuses, were often unable to collect them. Among other things, HP's compensation systems, including Omega, were deeply flawed and failed to collect and account for sales.

25.  The overarching problem with HP compensation systems was their failures to track and record sales data accurately and timely, which led to errors in inputting, rule applications, and ultimately, compensation calculations.

26.  For example, Omega and other HP compensation systems and related software, among other things, failed to account fully for HP products sold by resellers even though resellers

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

accounted for a substantial percentage of HP's products are sold by resellers. (A well known example would be Best Buy).

27.    HP divides resellers into two categories:  reporting resellers and non-reporting resellers.  As the names imply, reporting resellers – generally resellers who were the largest in size – were required to report their sales to HP, while non-reporting resellers were not.  (Reporting resellers received financial incentives and benefits that were not available to non-reporting resellers.)

28.    Most resellers were non-reporting resellers.  Many non-reporting resellers did not have the staff to satisfy HP's reporting requirements.  Further, many non-reporting resellers had concerns about disclosing client information to HP.

29.    HP's sales representatives were entitled to commissions both on direct sales they made, and on indirect sales made by resellers.  For example, an HP employee whose customers include a state's education system was supposed to be credited for all sales made to schools in that state regardless of whether the sale came directly from HP or through an HP reseller.  If a non-reporting reseller sold HP equipment to the schools but did not report the sale to HP, the sales employee would not get credit or a commission, and would have no way of knowing if the sale happened.

30.    Because non-reporting resellers had no obligation to report their sales – in fact they were often wary of notifying HP of sales activities – a representative generally did not get credit for sales made by non-reporting resellers.

31.    Although it may have been theoretically possible once in a while for a representative to obtain sales credit for sales by non-reporting resellers, to do so a sales representative would have to jump through the multiple hoops.

32.    HP also failed to pay sales representatives the amount HP had promised pursuant to its unilateral contract through the imposition of rules governing the reporting of indirect sales.

33.    During the time period at issue in this lawsuit, sales representatives could not submit an invoice manually unless the sale met a certain threshold amount (which varied year-to-year between $50,000 and $10,000).  Generally, more than ninety percent of invoices were less than

1     $25,000.  And governmental entities particularly tried to keep invoices below $10,000 to avoid a

2     formal "request for proposal" ("RFP") process.

3          34.     It was also more difficult for a sales representative to receive credit for manual

4     claims because they were processed by HP's sales compensation center in countries other than the

5     United States, but sales representatives were not permitted to contact that center.  Instead, a sales

6     representative would have to contact a sales compensation specialist in the United States.  Because

7     each sales compensation specialist handled more than 400 sales representatives, they seldom

8     responded to inquiries or complaints.

9          35.     In many instances, Omega simply did not record sales.  Often, the manual claim was

10    never accepted or properly credited.  Thus, commissions earned over a several year period on

11    "smaller" sales amounted to at least tens of thousands of dollars per person that HP never paid.

12         36.     Further, even when a manual claim was processed, it often took eight months (or

13    longer).  As a result, it was not considered in determining whether a quota had been met, or in

14    calculating commissions or bonuses.

15         37.     In addition to being cumbersome, submitting manual sales was problematic because

16    (a) HP provided no training on manual sales, (b) sales managers insist that representatives spend

17    their time processing new sales, and (c) many resellers do not want to provide such information.

18    **Acquisition and Use of the Omega System**

19         38.     HP's growth over the past decade was fueled in part by acquisition of other

20    companies.  In 2002, HP merged with Compaq Computer Corporation ("Compaq"). Compaq itself

21    had grown by acquiring other companies, including Digital Equipment Corporation ("DEC"),

22    which Compaq had purchased in 1998.

23         39.     HP's proposed merger with Compaq was led by Carly Fiorina ("Fiorina"), HP's

24    Chief Executive Officer at the time.  Walter Hewlett, the son of William Hewlett (one of the two

25    founders of HP), vigorously opposed the merger, leading to a proxy fight.  Although Fiorina

26    ultimately prevailed, and the two companies merged, she staked her reputation on the success of

27    the merger.  As a result, to demonstrate the merger's benefits HP integrated numerous Compaq

28    products into HP's operations.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

40.     One such product was a software package known as Omega that was used to calculate commissions.  Omega was developed by DEC, and was acquired by Compaq when it purchased DEC in 1998.

41.     When HP merged with Compaq, HP had in place a commission calculating system, known as NASCAR.  NASCAR was a more transparent system that allowed sales representatives to track direct orders as they were recorded, invoiced, and shipped to customers.  As a result, sales representatives could calculate the commissions and bonuses they would receive from such orders.

42.     Omega, by contrast, was not transparent and did not allow sales representatives to track orders.  Nonetheless, HP implemented company-wide use of Omega even after HP recognized that Omega was failing to record sales on which commissions were owed.

43.     After HP began using Omega, sales representatives were unable to obtain the same types of information about sales.  To give just one example, sales representative were often not able to access records showing all of the sales made by resellers.  As a practical matter, this prevented sales representatives from being able to calculate commissions.  Representatives had to take HP's word for it.

44.     Additionally, Omega was always at least a month and a half in arrears, often more than three months in arrears, and could be more than twelve months in arrears.  This meant, that even if sales representatives met their quota, Omega might not record the sales; instead, it might appear as if quota had not been met, thus resulting in commissions not being paid at all, or being paid three, six, or twelve months later.

45.     HP supervisors tried to stop complaints about Omega.  At meetings with upper-level management, sales representatives were told not to bring up Omega, and that if they did so, actions would be taken against the employee.

**HP's Admissions**

46.     HP's wrongful and unlawful conduct has been widespread, recurring and uniform across its locations.  HP's wrongful and unlawful conduct arises out of and is based on corporate systems, polices, and practices developed at and administered from HP's headquarters in Northern California.

47. Pursuant to HP's policies, credit for sales was dependent on Omega's calculations. HP has admitted the Omega system has malfunctioned, been subject to delays, and caused problems with paying commissions to employees and that such problems are chronic and persistent.

48. HP knew of shortcomings in the Omega system that resulted in wage statements and reports that did not accurately reflect the commission and bonus wages owed at any given time.

49. HP has acknowledged internally that millions of dollars in wages had gone unpaid.

50. HP admitted in an August 5, 2009 Wall Street Journal article that Omega had problems that prevented thousands of sales employees from getting proper and accurate paychecks. (See attached Exhibit A.)

51. HP has further acknowledged its failure to accurately and timely pay employees commissions by attempting to pay commissions owed retroactively. Attached as Exhibit B and incorporated by reference are examples of HP's admission that it failed to pay commissions or bonuses timely and accurately. The documents attached as Exhibit B also demonstrates HP's efforts to subvert the Members' and Employees' claims and rights in this case.

52. HP had all data available to determine how much the Class Members and Employees are owed, yet HP has failed to pay the wages owed.

53. The above-described systematic failures to pay the Class Members' and Employees' commissions and bonuses earned, and to properly credit the Class Members and Employees for sales, have injured and caused the Class Members and Employees to be damaged in an amount to be proven at trial.

54. All conditions precedent necessary to bring the claims asserted in this Complaint have been met.

## CLASS ALLEGATIONS

55. Plaintiffs bring this case as a class action on behalf of a General Class consisting of:

> All current and former employees of HP in the United States who sold equipment or services on behalf of HP and whose sales, commissions and/or earnings were tracked by the Omega computer system used by HP, for the period of time beginning August 6, 2005 (four years prior to the filing of the original complaint) until resolution of this Action.

56.     Plaintiffs also bring this case on behalf of two subclasses to enforce the wage and hour laws of the States of California and Colorado:

> Subclass A:   All current and former employees of HP working in California who sold equipment or services on behalf of HP and whose sales, commissions and/or earnings were tracked by the Omega computer system used by HP, for the period of time beginning August 6, 2005 (four years prior to the filing of the original complaint) until resolution of this Action.

> Subclass B:   All current and former employees of HP working in Colorado who sold equipment or services on behalf of HP and whose sales, commissions and/or earnings were tracked by the Omega computer system used by HP, for the period of time beginning August 6, 2005 (six years prior to the filing of the original complaint) until resolution of this Action.

57.     Numerosity: Plaintiffs estimate there are more than 50,000 current and former employees in the Class. Given defendant HP's massive size and the systematic nature of HP's failure to comply with common and statutory law, the members of the Class are so numerous that joinder of all Class Members is impractical.

58.     Common Questions of Law and Fact: Common questions of law and fact exist throughout the defined Class.   These include:

a.   The operation and use of the Omega computer system (and its accompanying data feeds/software) by HP in tracking and calculating the sales, commissions, and bonus wages earned by sales representatives throughout the country.

b.   The malfunctions of the Omega computer system (and its accompanying data feeds/software);

c.   HP's policies, omissions, and common course of conduct with respect to the Omega computer system and its malfunctions;

d.   Whether HP's systemic policies and practices regarding the failure to accurately, timely, and completely compensate the Employees and the Class Members for their work violates HP's compensation plans and contracts with its employees;

e.   Whether HP's systemic policies and practices regarding the failure to accurately, timely, and completely compensate the Class Members and Employees for their

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

1    work violates the California common law, or some other state common law, if

2    applicable;

3    f.   Whether HP's systemic policies and practices regarding the failure to

4         compensate the Class Members and Employees accurately, timely, and

5         completely for their work violates the California Labor Code and applicable

6         Wage Orders, or the statutes and wage orders of some other state law;

7    g.   Whether HP's systemic policies and practices, which led to a failure to

8         compensate the Employees and Class Members accurately, timely, and

9         completely for their work, constitutes unfair competition in violation of

10        California Business and Professions Code § 17200 *et seq*.;

11   h.   Whether HP's payroll policies and practices have violated California's labor

12        laws and/or the Unfair Business Practices Act – or the labor laws and unfair

13        business practices of some other state, if applicable – by yielding wage

14        statements that do not accurately reflect the employee earnings or other items

15        listed in Labor Code § 226(a) or an equivalent statute of another state, if

16        applicable;

17   i.   Whether HP violated Labor Code §§ 201-202 and/or the Unfair Business

18        Practices Act – or the labor laws and unfair business practices of some other

19        state, if applicable – by failing to promptly pay Plaintiffs all wages (i.e., upon

20        termination of their employment);

21   j.   The proper formula for calculating an accounting, restitution, unjust enrichment,

22        damages, and waiting time penalties, and other statutory or civil penalties owed

23        to the Class Members and Employees as a result of the violations alleged here;

24   k.   The crafting of appropriate declaratory and injunctive relief.

25   59.   Typicality: The claims of the Employees are typical of the claims of the other

26   members of the Class. The Class Members and Employees have been sales representatives for HP.

27   The Employees, like the other Class Members, were subject to the same set of policies and system

28   of Defendants regarding the tracking, crediting and payment of earned commissions and bonuses.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

1   Plaintiffs' claims are based on the same legal theories as the claims of the Class.

2       60.   <u>Adequate Representation:</u> The Employees will fairly and adequately protect the

3   interests of the Class.  There is no antagonism or conflict of interest between the Employees and

4   the Class Members.  The Employees have retained counsel who are competent and experienced in

5   complex, class action litigation.

6       61.   DeBever and Purvis are California citizens who worked as sales representatives for

7   HP in California.  They are adequate representatives for the General Class and Subclass A.

8       62.   Plaintiffs, Jeffrey Johnson, Jennifer Riese and Shaun Simmons, are Colorado citizens

9   who worked as sales representatives for HP in Colorado.  They are adequate representatives for the

10   General Class and Subclass B.

11       63.   Certification is appropriate under FRCP 23(b)(2) because defendant HP has acted or

12   refused to act on grounds generally applicable to the class, thereby making final injunctive relief

13   and declaratory relief appropriate to prevent defendant HP from continuing to violate California

14   and Colorado wage and hour laws.

15       64.   Certification is appropriate under FRCP 23(b)(3) because: (a) common questions of

16   law or fact predominate over questions affecting only individual Class Members; (b) the forum is

17   convenient to the parties, Class Members, and potential witnesses; (c) the class is specifically

18   identifiable to facilitate provision of adequate notice; (d) there will be no significant problems

19   managing this case as a class action; and (e) a class action is superior to other available methods

20   for the fair and efficient adjudication of this controversy because individual Class Members have

21   minimal interest in controlling the prosecution of separate actions.

22   **FIRST CLAIM FOR RELIEF**
**(Breach of Contract/Breach of Implied Covenant**
23   **of Good Faith and Fair Dealing)**

24       65.   The Employees incorporate and re-allege all preceding paragraphs as if fully set

25   forth herein.

26       66.   HP presented and entered into standardized, unilateral employment contracts with

27   The Employees, in which HP promised to pay the employees wages in return for their work,

28   including paying the Employees and Class Members commissions and bonuses if the Employees

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

and Class Members made sales and met certain established targets.

67.     HP agreed to pay wages to the Employees and Class Members pursuant to the standardized compensation plans and contracts described above, and as required by law.  (See Exhibit C.)

68.     Accordingly, the Employees and Class Members entered into a binding and enforceable contract for which there was adequate consideration.

69.     The Employees and Class Members performed the work they agreed to do, but HP failed to pay the Employees and Class Members all of the promised wages.

70.     HP breached its contract with the Employees and Class Members.

71.     HP also breached its implied covenant of good faith and fair dealing in the contract of employment HP had with the Employees and Class Members in that:

        a.   The Employees and Class Members performed the obligations required by their contract of employment;

        b.   HP engaged in conduct, separate and apart from its performance of obligations under its employment contract, without good faith and for the purpose of depriving the Employees and Class Members, of rights and benefits under their employment contract;

        c.   HP's conduct caused injury to the Employees and Class Members.

72.     As a result of HP's breaches, the Employees and Class Members have been damaged in an amount to be determined at trial.

73.     Wherefore, the Employees and Class Members request relief as provided below, and such additional relief that is just and proper.

### SECOND CLAIM FOR RELIEF
**(Alternative to First Claim – Unjust Enrichment/Implied Contract/Quantum Meruit)**

74.     The Employees incorporate and re-allege all paragraphs – except paragraphs 17-22 and 65-73 – as if fully set forth herein.

75.     The Employees and Class Members agreed to sell HP's products and services in exchange for a salary and other wages.

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

76.     Despite requests and demands, HP has failed and refused to pay, and pay timely, for the benefits it received from the Employees and Class Members, including but not limited to sales revenues generated by Plaintiffs.

77.     HP has been, is being, and will continue to be, unjustly enriched if HP is not required to pay a reasonable sum for these benefits from the Employees and Class Members.

78.     The Employees and Class Members have been, are being, or will be, inequitably injured if HP is not required to pay a reasonable sum for these benefits from the Employees and Class Members.

79.     HP knew and knows that it is retaining a benefit to the detriment of the Employees and Members under circumstances that make such retention unjust.

80.     As a result of HP's actions, the Employees and Class Members have been damaged and injured in an amount to be determined at trial.

81.     Wherefore, the Employees and Class Members request relief as provided below, and such additional relief that is just and proper.

### THIRD CLAIM FOR RELIEF
**(Alternative to First Claim for Relief – Promissory Estoppel)**

82.     The Employees incorporate and re-allege all paragraphs all paragraphs – except paragraphs 17-22 and 65-73 – as if fully set forth herein.

83.     Through its conduct in employing the Employees and Class Members, HP made a clear and definite promise that the Employees and Class Members would be paid commissions and bonuses on sales made by them on behalf of HP.

84.     The wage terms were sufficiently definite to create a promise on behalf of HP to the Employees and Class Members that they would be paid specified amounts of commissions and bonuses on sales within their territories.

85.     By providing the Employees and Class Members with the documents described in, including but not limited to those attached to, this third amended complaint – as well as taking the other actions and conduct described in this third amended complaint – HP manifested a willingness to enter into an employment agreement with the Employees and Class Members. Because of this

manifestation, the Employees and Class Members reasonably relied, and were justified in reasonably relying, on HP's offer to pay, and pay timely, wages to the Employees and Class Members in exchange for sales made on behalf of HP.  The Employees and Class Members accepted HP's offer by receiving such documents and working for HP.

86.     HP made such promises with the knowledge and understanding that the Employees and Class Members were seeking employment with them.  The Employees and Class Members relied on such promises by HP that it would pay, and pay timely, commissions earned in exchange for the Employees and Class Members making sales for HP.  Absent such promises, the Employees and Class Members would not have worked for HP.  Thus, HP knew or reasonably should have known that the Employees and Class Members would be reasonably induced to rely on such promises.

87.     It was the mutual intent of the parties that the Employees and Class Members would be provided commissions and bonuses on sales made by them for HP.

88.     HP knew or reasonably should have known that the Employees and Class Members undertook their employment with a reasonable expectation that they would be paid for all their wages earned, including commissions and bonuses.

89.     The Employees and Class Members reasonably relied on HP's promises and were induced to perform all the work requested by HP, including making sales for it.  HP has failed and refused to fulfill its promise to pay the Employees and Class Members all wages earned.

90.     The Employees and Class Members acted to their substantial detriment in reasonably relying HP's promise to pay, and pay timely, the Employees and Class Members the wages they earned.  Injustice can be avoided only if this Court mandates that HP pay their current and former employees all wages earned but not paid (with all applicable penalties and interest thereon).

91.     Allowing HP to reap the rewards of sales made by the Employees and Class Members without paying commissions for such sales would allow HP to profit without any legal consequences and would be unjust.

92.     As a result of HP's actions, the Employees and Class Members have been damaged and injured in an amount to be determined at trial and HP is liable to the Employees and Class

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

1    Members for damages incurred as a result of Defendants' failure to pay earned wages.

2        93.    Wherefore, the Employees and Class Members request relief as provided below, and

3    such additional relief that is just and proper.

4                    ## CLAIMS UNDER CALIFORNIA'S WAGE STATUTES

5        94.    This Court has ruled that claim nos. four through ten, arising under California's

6    wage and hour statutes, including but not limited to Cal. Lab. Code §§ 201, 202, 203, 204, 218,

7    223, 226, 2698, 2926, and 2927, do not apply to, and thus are dismissed as to, HP employees who

8    never worked in California.  Additionally, the Court has ruled that because claim no. eleven,

9    brought under Cal. Bus. & Prof. Code § 17200, relies centrally on HP's "alleged violations of

10   California's employment law," that cause of action likewise does not apply to, and is dismissed as

11   to the Colorado plaintiffs.  **Accordingly, claim nos. four through eleven are brought by the**

12   **employees who worked for HP in California, on their own behalf, and on behalf of** Subclass

13   A, the current or former employees who work or worked for HP in California (collectively, the

14   "California Employees and Class Members").  Should information or evidence be discovered that

15   provides bases other than California employment law for a claim under Cal. Bus. & Prof. Code

16   §17200, the Employees may seek reconsideration of the Court's dismissal of claim no. eleven as to

17   Employees and Class Members who did not work in California.

18                        ## FOURTH CLAIM FOR RELIEF
                    **(Paying Lower Than Designated Wage: Cal. Lab. Code § 223)**
19

20       95.    Michael DeBever, and James Purvis (together, the "California Employees")

21   incorporate and re-allege all paragraphs as if fully set forth herein.

22       96.    California Labor Code § 223 provides:  "Where any statute or contract requires an

23   employer to maintain the designated wage scale, it shall be unlawful to secretly pay a lower wage

24   while purporting to pay the wage designated by statute or by contract."

25       97.    HP has, through its use of and policies surrounding the Omega computer system,

26   including the known malfunctions and inaccuracies of that system (and its accompanying data

27   feeds and software), systemically and secretly paid lower wages to the California Employees and

28   Class Members than the amounts agreed or promised to the California Employees and Class

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

1 | Members.

2 | 98.   The California Employees and Class Members have been injured, and are entitled to

3 | recover their earned bonuses and commissions pursuant to the promises to, or agreements with,

4 | HP.  HP is liable to the California Employees and Class Members for unpaid wages, interest, costs

5 | and attorneys fees pursuant to California law.  HP is also liable for any penalties prescribed by

6 | California law.

7 | 99.   Wherefore, the California Employees and Class Members request relief as provided

8 | below, and such additional relief that is just and proper.

9 | **FIFTH CLAIM FOR RELIEF**

10 | **(Failure to Pay Wages: Cal. Lab. Code § 218)**

11 | 100.   The California Employees incorporate and re-allege all paragraphs as if fully set

12 | forth herein.

13 | 101.   At all relevant times, HP failed to pay wages owed to the California Employees and

14 | Class Members in the form of commission and bonuses, as required by California law.

15 | 102.   During the course of employment, HP allowed, suffered, and permitted the

16 | California Employees and Class Members to perform work for the benefit of HP without being

17 | paid the wages owed them for this labor.

18 | 103.   As a result, the California Employees and Class Members are entitled to wages

19 | pursuant to California law, including, but not limited to, Cal. Lab. Code §§ 201, 202, 203, 204 and

20 | 218.

21 | 104.   Further, HP is liable for any penalties prescribed by California law for its violations

22 | of California law.

23 | 105.   The California Employees and Class Members have been injured and seek as

24 | damages in an amount to be determined, interest, fees and costs pursuant to California law.

25 | 106.   Wherefore, the California Employees and Class Members request relief as provided

26 | below, and such additional relief that is just and proper.

27

28

## SIXTH CLAIM FOR RELIEF
### (Failure to Pay Wages: Cal. Lab. Code § 204)

107. The California Employees incorporate and re-allege all paragraphs as if fully set forth herein.

108. At all relevant times, HP failed to pay, and pay timely, wages in the form of the California Employees' and Class Members' commissions and bonuses, as required by California law.

109. During the course of employment by the California Employees and Class Members, HP allowed, suffered, and permitted the California Employees and Class Members to perform work for the benefit of HP without being paid the wages owed them in a timely manner as required by § 204.

110. As a result, the California Employees and Class Members have been injured, and are entitled to wages and penalties pursuant to California law, including, but not limited to, Cal. Lab. Code §§ 204 and 210. Further, HP is liable for any penalties prescribed by California law for its violations of California law.

111. The California Employees, on their own behalf and on behalf of the California Class Members, seek as damages in an amount to be determined, interest, fees and costs pursuant to California law.

112. Wherefore, the California Employees and the Class Members request relief as provided below, and such additional relief that is just and proper.

## SEVENTH CLAIM FOR RELIEF
### (Failure to Provide Itemized Wage Statements; Cal. Lab. Code § 226)

113. The California Employees incorporate and re-allege all paragraphs as if fully set forth herein.

114. HP is required to comply with California wage and hour law. HP is required to provide accurate itemized wage statements for each pay period to the California Employees and Class Members pursuant to California law including, but not limited to, Cal. Lab. Code § 226.

115. Within the applicable time period prior to the filing of this complaint up through and

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

1    including the present date through adjudication, HP has failed to provide timely, accurate itemized

2    wage statements to the California Employees and Class Members.  The wage statements do not

3    accurately reflect the actual rate of pay, actual gross wages earned, actual net wages earned, or

4    appropriate deductions.

5        116.    When HP paid the California Employees and Class Members, HP included dates on

6    the pay stubs that did not accurately reflect the dates for which the California Employees and Class

7    Members were being paid. HP has admitted that the Omega system (including its accompanying

8    data feeds/software) was often six months or more behind.  Thus, pay stubs provided to California

9    Employees and Class Members were inaccurate in violation of Cal. Labor Code § 226.

10       117.    HP's failure to properly itemize the wage statements of the California Employees

11   and Class Members caused them injury and damages, including, but not limited to, unpaid

12   commissions, unpaid bonuses, lost interest on monies not paid, and unpaid benefits such as 401(k)

13   matching.

14       118.    The California Employees, on their own behalf and on behalf of the California Class

15   Members, seek payment of actual damages pursuant to Cal. Lab. Code §226(e) for each California

16   Employee and Class Member who did not receive accurate itemized wage statements during their

17   employment with HP.  The California Employees and Class Members also seek the payment of

18   costs, interest, and attorneys' fees pursuant to California law.

19       119.    Wherefore, the California Employees and Class Members request relief as provided

20   below, and such additional relief that is just and proper.

21                          **EIGHTH CLAIM FOR RELIEF**

22        **(Failure to Compensate Employees: Cal. Lab. Code §§ 2926, 2927)**

23       120.    The California Employees incorporate and re-allege all paragraphs as if fully set

24   forth herein.

25       121.    California Labor Code §§ 2926 & 2927 provide that an employee who is not

26   employed for a specified term and who is dismissed by his employer or quits is entitled to

27   compensation for services rendered up to the time of such dismissal.

28       122.    HP is in violation of those Code provisions as to the California Employees and Class

1  Members who were not employed for a specified term and either were dismissed or quit, but did

2  not receive their earned commissions and bonuses through the date of their separation from HP.

3  The California Employees and Class Members described in the preceding sentence, have been

4  injured by HP's violations of California Labor Code §§ 2926 & 2927.

5    123. The California Employees and Class Members described in the preceding paragraph,

6  seek unpaid wages, interest, costs and other relief, in an amount to be determined, pursuant to

7  California law.  Further, HP is liable for any penalties prescribed by California law for its

8  violations of California law.

9    124. Wherefore, the California Employees and Class Members request relief as provided

10  below, and such additional relief that is just and proper.

11  **NINTH CLAIM FOR RELIEF**

12  **(Recovery of Waiting Time Penalties: California Labor Code §§ 201, 202, and 203)**

13    125. The California Employees incorporate and re-allege all paragraphs as if fully set

14  forth herein.

15    126. California Labor Code § 203 provides that if an employer willfully fails to pay, without

16  abatement or reduction, in accordance with California Labor Code §§ 201, 201.5, 202 and 205.5, any

17  wages of an employee who is discharged or who resigns, the wages of the employee shall continue as a

18  penalty from the due date thereof at the same rate until paid up to a maximum of thirty (30) days.

19    127. During all relevant times, HP had and continues to have a consistent and uniform policy,

20  practice and procedure of willfully failing to pay the California Employees and Class Members who

21  are no longer employed by HP, earned and unpaid wages in the form of commissions and bonuses at

22  the termination of their employment, in violation of California Labor Code §§ 201 and 202.

23    128. During all relevant times, HP willfully failed to pay the California Employees and Class

24  Members who are no longer employed by HP a sum certain for earned wages in the form of

25  commission and bonuses, at the time of their termination or within seventy-two hours of their

26  resignation, and failed to pay those sums for thirty days thereafter.

27    129. During all relevant times, HP willfully failed to pay the California Employees and Class

28  Members who are no longer employed by HP, in that HP knew these commissions and bonuses were

1   due, but nevertheless failed to pay them.

2       130.   The California Employees and Class Members who are no longer employed by HP

3   have been injured because of HP's policy, practice and procedure.

4       131.   California Employees and Class Members who are no longer employed by HP are

5   entitled to penalties pursuant to California Labor Code § 203, in the amount of each person's daily

6   wage multiplied by thirty days.

7       132.   Wherefore, the California Employees and Class Members request relief as provided

8   below, and such additional relief as is just and proper.

9                           **TENTH CLAIM FOR RELIEF**
                   **(Private Attorneys General Act of 2004, Cal. Lab. Code §2698 et seq.)**
10

11      133.   The California Employees incorporate and re-allege all paragraphs as if fully set forth

12  herein.

13      134.   Pursuant to the Private Attorneys General Act of 2004, Cal. Lab. Code §2698 et seq.,

14  the California Employees gave notice to HP and to the California Labor and Workforce

15  Development Agency of HP's violations of the California Labor Code on October 23, 2009, more

16  than thirty-three days from the date of this Amended Complaint.

17      135.   The State of California has declined to investigate the allegations against HP.

18      136.   Pursuant to California Labor Code § 2699(a), the California Employees and Class

19  Members are entitled to civil penalties provided in California law including, but not limited to, Cal.

20  Lab. Code §§ 210, 226.3 and 225.5.

21      137.   The California Employees and Class Members also are entitled to the civil penalties

22  set forth in California Labor Code § 2699(f) for violations of provisions of the Labor Code that do

23  not themselves carry civil penalties, including, but not limited to, Cal. Lab. Code §§ 201, 203, 218,

24  and 226(e), 2926, and 2927.

25      138.   The California Employees, or any of them, are members of the class that are entitled

26  to receive civil penalties and attorneys' fees provided for in Cal. Lab. Code § 2698 et seq. and

27  otherwise.

28      139.   Wherefore, Plaintiffs and Class Members request relief as provided below, and such

additional relief as is just and proper.

**ELEVENTH CLAIM FOR RELIEF**
**(Unfair/Unlawful/Fraudulent Business Practices:  Cal. Bus. & Prof. Code § 17200, et seq.)**

140.    The California Employees incorporate and re-allege all paragraphs as if fully set forth herein.

141.    California Business and Professions Code §§ 17200, et. seq. (the "Unfair Competition Law" or "UCL"), prohibits unfair competition in the form of any unlawful, unfair or fraudulent business act or practice.

142.    California Business and Professions Code §17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

143.    Labor Code §90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

144.    Beginning at an exact date unknown to the California Employees, but at least since the date four years before the filing of this suit, HP has committed acts of unfair competition as defined by the Unfair Business Practices Act, by engaging in the unlawful, unfair and fraudulent business practices and acts described in this Complaint, including, but not limited to:

    a.   violations of Labor Code §§ 218, 223, 2926, 2927 pertaining to unpaid wages;

    b.   violations of Labor Code §§ 201-203;

    c.   violations of Labor Code §§ 226;

    d.   misrepresentations regarding amounts it would pay, and when it would pay, the California Employees and Class Members;

    e.   HP's deceptive, unfair and fraudulent business practices including failing to pay California Employees and Class Members; failing to pay wages timely; failing to track sales accurately and pay commissions; informing California Employees and Class Members that they would be paid, even though HP had no intention of

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

1    actually paying them, changing employee quotas and territories to prevent having

2    to pay employees commissions, and failing and refusing to pay employees

3    commissions owed and earned; and

         f.    failing to pay commissions and bonuses timely and accurately.

4

5    145.    The violations of these laws and regulations, as well as of the fundamental California

6    public policies underlying them, serve as unlawful predicate acts and practices for purposes of

7    Business and Professions Code §§17200, et. seq.

8    146.    The acts and practices described above constitute unfair, unlawful and fraudulent

9    business practices, and unfair competition, within the meaning of Business and Professions Code

10   §§17200, et seq.  Among other things, the acts and practices have taken from the California

11   Employees and Class Members wages rightfully earned and paid to them to recover for

12   occurrences or losses outside of their control and not the result of their willfulness or gross

13   negligence, while enabling HP to gain an unfair competitive advantage over law-abiding

14   employers and competitors.

15   147.    As a direct and proximate result of these acts and practices, the California

16   Employees and Class Members have suffered a loss of money and property, in the form of unpaid

17   wages that are due and payable to them.

18   148.    Business and Professions Code §17202 provides:  "Notwithstanding Section 3369 of

19   the Civil Code, specific or preventive relief may be granted to enforce a penalty, forfeiture, or

20   penal law in a case of unfair competition."  The California Employees and Class Members are

21   entitled to enforce all applicable penalty provisions of the Labor Code pursuant to Business and

22   Professions Code §17202.

23   149.    The California Employees' success in this action will enforce important rights

24   affecting the public interest.  In that regard, the California Employees sue on behalf of themselves

25   and the California Class Members.  The California Employees and Class Members seek, and are

26   entitled to, unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing

27   to them.

28   150.    The California Employees take upon themselves enforcement of these laws and

1   lawful claims.  There is a financial burden involved in pursuing this action, the action is seeking to

2   vindicate a public right, and it would be against the interests of justice to penalize the California

3   Employees by forcing them to pay attorneys' fees from the recovery in this action.  Attorneys' fees

4   are appropriate pursuant to Code of Civil Procedure §1021.5 and otherwise.

5       151.    Wherefore, the California Employees and Class Members request relief as provided

6   below, and such additional relief as is just and proper.

7                    **CLAIMS UNDER COLORADO WAGE STATUTE**

8       152.    Jeffrey Johnson, Jennifer Riese, and Shaun Simmons (the "Colorado Employees") –

9   on their own behalf and on behalf of Subclass B, the HP employees who worked in Colorado (the

10  "Colorado Class Members") – allege claim nos. eleven and twelve under Colorado law:

11                        **TWELFTH CLAIM FOR RELIEF**
        **(Failure to Compensate Employees, and to Compensate Employees Timely:**
12      **Colo. Rev. Stat. § 8-4-109, and Colo. Rev. Stat. 8-4-103(1)(a))**

13      153.    The Colorado Employees incorporate and re-allege all paragraphs as if fully set forth

14  herein.

15      154.    Colo. Rev. Stat. § 8-4-109(1)(a) provides that when an employee is discharged:

16          "[T]he wages or compensation for labor or service earned, vested,
            determinable, and unpaid at the time of such discharge is due and
17          payable immediately. If at such time the employer's accounting unit,
            responsible for the drawing of payroll checks, is not regularly
18          scheduled to be operational, then the wages due the separated
            employee shall be made available to the employee no later than six
19          hours after the start of such employer's accounting unit's next regular
            workday; except that, if the accounting unit is locate off the work site,
20          the employer shall deliver the check for wages due the separated
            employee no later than twenty-four hours after the start of such
21          employer's accounting unit's next regular workday . . . ."

22      155.    Colo. Rev. Stat. § 8-4-109(1)(b) states that "[w]hen an employee quits or resigns

23  such employee's employment, the wages or compensation shall become due and payable upon the

24  next regular payday."

25      156.    HP violated these statutory provisions as to the Colorado Employees and the

26  Colorado Class Members (together, the "Colorado Employees and Class Members") who either

27  were dismissed or quit but did not receive their earned commissions and bonuses through the date

28  of their separation from HP.

157.   The Colorado Employees and Class Members have been injured by HP's violations of Colo. Rev. Stat. § 8-4-109(1).

158.   Colo. Rev. Stat. § 8-4-103(1)(a) provides:

> All wages or compensation, other than those mentioned in section 8-4-109, earned by any employee in any employment, other than those specified in subsection (3) of this section, shall be due and payable for regular pay periods of no greater duration than one calendar month or thirty days, whichever is longer, and on regular paydays no later than ten days following the close of each pay period unless the employer and the employee shall mutually agree on any other alternative period of wage or salary payments.

159.   HP failed to pay, and pay timely, wages or compensation in the form of the Colorado Employees' and Class Members' commissions and bonuses, as required by Colorado law.

160.   During the course of employment by the Colorado Employees and Class Members, HP allowed, suffered, and permitted the Colorado Employees and Class Members to perform work for the benefit of HP without being paid the wages owed them in a timely manner as required by C.R.S. § 8-4-103(1)(a).

161.   As a result, the Colorado Employees and Class Members have been injured, and are entitled to wages and penalties pursuant to Colorado law.

162.   HP's violations of Colorado law were willful.

163.   The Colorado Employees and Class Members seek unpaid wages, interest, costs, and other relief, in an amount to be determined, pursuant to Colorado law.

164.    HP is also liable for all penalties or punitive damages prescribed by Colorado law.

165.   Wherefore, the Colorado Employees and Class Members request relief as provided below, and such additional relief as is just and proper.

## THIRTEENTH CLAIM FOR RELIEF
### (Improper Deductions: Colo. Rev. Stat. § 8-4-105)

166.   The Colorado Employees incorporate and re-allege all paragraphs as if fully set forth herein.

167.   C.R.S. § 8-4-105 provides that "[n]o employer shall make a deduction from the wages or compensation of an employee" except for specific, statutorily-authorized deductions.

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

168.    HP violated this statutory provision as to the Colorado Employees and Class Members whose wages have been reduced or not paid by HP in that they did not receive their full earned commissions and bonuses from HP.  The Colorado Employees and Class Members have been injured by HP's violations of Colo. Rev. Stat. § 8-4-105.

169.    The Colorado Employees and Class Members Employees, seek their unpaid wages, interest, costs and other relief, in an amount to be determined, pursuant to Colorado law.  Further, HP's violations of Colo. Rev. Stat. § 8-4-105 were and are willful, entitling the Colorado Employees and Class Members to punitive damages.

170.    Wherefore, the Colorado Employees and Class Members request relief as provided below, and such additional relief as is just and proper.

### FOURTEENTH CLAIM FOR RELIEF
#### (Accounting)

171.    The Employees incorporate and re-allege all paragraphs as if fully set forth herein.

172.    HP has failed to properly account for sales made by and commissions owed to the Employees and Class Members.

173.    The Employees and Class Members are not in a position to completely and accurately determine the exact amount owed to them.

174.    HP should provide, and the Employees request the Court to order HP to provide, a full accounting to the Employees and Class Members so they can determine the exact amounts owed to them.

### PRAYER FOR RELIEF

WHEREFORE, the Employees, on their own behalf and on behalf of the Class Members, request the following relief:

**For All Employees and Class Members**

1.    An order certifying this action as a class action under Fed. R. Civ. P. 23 and appointing the Employees as Class Representatives and their attorneys as Class Counsel;

2.    Restitution for all unpaid wages;

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

3.      An order awarding the Employees and Class Members compensatory damages, including but not limited to, lost and unpaid wages, earnings and other employee benefits and all other sums of money owed to Plaintiffs and Class Members, together with interests on these amounts;

4.      Injunctive relief prohibiting HP, its officers, agents and all those acting in concert with HP, from committing in the future the violations of law proved by the Employees and Class Members;

5.      An order awarding Plaintiffs and Class Members punitive damages;

6.      Pre-judgment and post-judgment interest, as provided by law;

7.      An order requiring HP to disgorge all economic benefits it received from its failures or refusals to record sales and pay the correct amount of commissions or bonuses to the Employees and Members.

8.      All applicable penalties for the violations set forth here;

9.      A reasonable attorneys' fees and costs of suit;

10.     An accounting to identify, locate, and restore to the Employees and Class Members the wages they are due, with interest;

11.     And, such other and further relief as the Court may deem necessary and proper.

**For California Employees and Class Members**

1.      An order certifying a Subclass A, as defined above, and appointing the California Employees as Subclass A Representatives and their attorneys as Subclass A Counsel;

2.      A declaratory judgment that HP has violated Business and Professions Code §§ 17200 et seq.;

3.      An award of restitution, according to proof, under the law and the Business and Professions Code §§17200-17205, with interest;

4.      A determination that HP acted willfully and without good faith, and that Plaintiffs and Class Members are entitled to waiting time penalties pursuant to Labor Code § 203;

5.      An order awarding Plaintiffs and Class Members all applicable statutory and civil

1  remedies, damages, and penalties to which they are entitled under California law;

2      6.      And, such other and further relief as the Court may deem necessary and proper.

3

4  **For Colorado Employees and Class Members**

5      1.      An order certifying a Subclass B, as defined above, and appointing the Colorado

6              Employees as Subclass B Representatives and their attorneys as Subclass B Counsel;

7      2.      An order awarding Plaintiffs and Class Members all applicable statutory and civil

8              remedies, damages, penalties, and punitive damages to which they are entitled under

9              Colorado law;

10     3.      And, such other and further relief as the Court may deem necessary and proper.

11

12  Date: July 21, 2010                        Respectfully submitted,

13                                             FRANKLIN D. AZAR &
                                               ASSOCIATES, P.C.
14
                                               GRADY SCHNEIDER, L.L.P.
15
                                               SCHNEIDER WALLACE
16                                             COTTRELL BRAYTON
                                               KONECKY LLP
17
                                                 /s/
18                                             JOSHUA KONECKY
                                               Counsel for Plaintiffs
19

20

21

22

23

24

25

26

27

28

SCHNEIDER  WALLACE
COTTRELL  BRAYTON
KONECKY LLP

1

**JURY DEMAND**

2        Plaintiffs hereby demand a trial by jury on all claims for which they are entitled to a jury

3    trial.

4

Date: July 21, 2010                          Respectfully submitted,

5

6                                            FRANKLIN D. AZAR &
                                             ASSOCIATES, P.C.

7                                            GRADY SCHNEIDER, L.L.P.

8                                            SCHNEIDER WALLACE
                                             COTTRELL BRAYTON
9                                            KONECKY LLP

10                                            __/s/_____
                                             JOSHUA KONECKY
11                                            Counsel for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28