SCHNEIDER WALLACE
COTTRELL BRAYTON KONECKY LLP
TODD M. SCHNEIDER (SBN 158253)
tschneider@schneiderwallace.com
JOSHUA G. KONECKY (SBN182897)
jkonecky@schneiderwallace.com
LISA M. BOWMAN (SBN 253843)
lbowman@schneiderwallace.com
180 Montgomery Street, Suite 2000
San Francisco, California 94104
Tel: (415) 421-7100
Fax: (415) 421-7105

FRANKLIN D. AZAR & ASSOCIATES, P.C.
FRANKLIN D. AZAR (*Pro Hac Vice*)
azarf@fdazar.com
MEGHAN MARTINEZ (*Pro Hac Vice*)
martinezm@fdazar.com
RICHARD BARKLEY (*Pro Hac Vice*)
barkleyr@fdazar.com
NATHAN J. AXVIG (*Pro Hac Vice*)
axvign@fdazar.com
JASON B. WESOKY (*Pro Hac Vice*)
wesokyj@fdazar.com
14426 East Evans Avenue
Aurora, Colorado 80014
Tel: (303) 757-3300
Fax: (303) 757-3206

THE LANIER LAW FIRM, P.C.
Christopher D. Banys SBN: 230038
Daniel M. Shafer SBN: 244839
cdb@lanerlawfirm.com
dms@lanierlawfirm.com
2200 Geng Road, Suite 200
Palo Alto, CA 94303
Tel: (650) 322-9100
Fax: (650) 322-9103

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JEFFREY JOHNSON, JENNIFER RIESE, SHAUN SIMMONS, and JAMES PURVIS, individually, and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>HEWLETT-PACKARD COMPANY and DOES 1-25 Inclusive,<br><br>Defendants. | Case No. 3:09-cv-003596-CRB<br><br>**CLASS ACTION**<br><br>**MOTION TO COMPEL HP'S AUDIT DOCUMENTS; FOR *IN CAMERA* INSPECTION OF DOCUMENTS ALLEGED TO BE PRIVILEGED; AND FOR A RESPONSE TO INTERROGATORIES 18 AND 22**<br><br>Dept.: Courtroom 18, 19th Floor<br>Judge: Hon. Bernard Zimmerman<br>Hearing Date: Wednesday, January 5, 2011<br>Time: 10:00 am |

# NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on January 5, 2010, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Bernard Zimmerman, United States District Court, Northern District of California, Courtroom 18, 19th Floor, 450 Golden Gate Avenue, San Francisco, California, Plaintiffs will move to compel HP's audit documents (and documents concerning the audit); for an *in camera* inspection of documents alleged to be privileged; and for a response to Interrogatories 18 and 22.

## MEMORANDUM OF POINTS AND AUTHORITIES

The key allegations in this case concern Hewlett-Packard Company's ("HP") failure to pay commissions and other incentive payments owed to its sales representatives. Plaintiffs (the "Employees"), allege that there were systemic and widespread problems with HP's computer and computer data entry systems designed to record sales and calculate commissions; a system centered around HP's Omega software, including the numerous data feeds that are part of the Omega ecosystem (collectively, "Omega").

Attempts to obtain information and documents from HP on issues relevant to Omega and employee earnings has been an ongoing, frustrating battle. *See* Declaration of Meghan Martinez ("Martinez Decl.") attached as Exhibit A. This motion has evolved from HP's refusal to provide factual information regarding its defenses (in response to interrogatories) and HP's attempt to improperly and untimely assert the attorney-client privilege and work product doctrine to conceal key documents, including HP's own audits of Omega. These audits and audit documents are key to establishing Plaintiffs' class-based allegations and damages, among other matters; in other words, this discovery dispute is about the heart of the case.

## FACTUAL BACKGROUND

This Court has recognized that a key issue in this case is whether Omega correctly calculated, and timely paid, the commissions owed to HP's sales representatives. Two highly relevant area of inquiry, therefore, concern: 1) efforts by HP to identify, quantify, and address problems with Omega and its calculation of commissions; and 2) efforts by HP to determine whether the Employees are owed any commissions.

**A.   Discovery Requests Related to HP's Audit of Omega**

Almost nine months ago, on February 23, 2010, the Employees asked HP to produce:

> All Documents related to any efforts to fix, review, maintain, patch, upgrade, replace, and/or update the Omega System between 2004 and the present, including any reviews of the Omega System conducted by any third parties.

(Plaintiffs' First Request for Production of Documents at 1 (Request No. 8).) *See also* Martinez Decl. (Ex. 1).

HP objected to Request No. 8 by advancing six generic objections, including: "[the request] seeks documents protected by the attorney-client privilege or attorney work product doctrine." (Defendant Hewlett-Packard Company's Response to Plaintiffs' First Set of Requests for Production Of Documents (the "Responses") at 7 (Response to Request No. 8). *See* Martinez Decl. (Ex. 2). HP then stated that "[s]ubject to and without waiving the foregoing objections, Defendant will produce non-privileged, responsive documents to the extent they exist and can be located." (*Id.*) HP failed to either produce any documents that were responsive to Request No. 8 or a privilege log when it submitted its Responses. *See* Martinez Decl. Thus, the Employees were unable to determine whether HP had no responsive documents, or whether it believed them to be privileged. (*Id.*)

On May 5, 2010, HP produced 2,400 pages of documents – none related to any audits (internal or external) of Omega. (*Id.*) HP also failed to produce a privilege log. (*Id.*) Finally, on August 5, 2010, three months after it responded to the Employees' Requests, HP produced a privilege log identifying a mere 12 documents. (*Id.*) Nine of the document descriptions referred to a "FY09 SOX [Sarbanes-Oxley] Audit" that purportedly had been performed at the direction of HP's Deputy General Counsel. (*See, e.g.*, Privilege Log at 1 (Entry No. 2). *See* Martinez Decl. (Ex. 3). <u>No</u> documents listed on the privilege log referred to any other "efforts to fix, review, maintain, patch, upgrade, replace, and/or update the Omega System between 2004 and the present . . . ." (Martinez Decl.) In fact, the only "audit" identified in the first privilege log appears to be a routine audit done by Ernst and Young to determine compliance with SEC rules and regulations.

More recently, however, HP revealed the audit was something much more relevant to Omega. The factual developments that lead to this revelation are as follows: During Robert Slaby's deposition, Employees' counsel asked Slaby about audits of Omega performed by third-party consultants. (*Id.*) HP's counsel instructed Slaby not to answer if "any such audits were done under the direction of legal counsel." (Deposition of Robert Frederic Slaby ("Slaby Dep."), 243:9-18 Martinez Decl. (Ex. 4).) Slaby refused to answer the question about his knowledge of third-party audits. *See also* Martinez Decl. However, in a separate line of questioning, Slaby disclosed the fact that HP employees with Sales Compensation Operations checked the results from Omega, and that

"processes [HP has] in place also include **an audit** of the processes to make sure they're being followed."  (*See* Slaby Dep., 68:6-69:9 (emphasis added) Martinez Decl. (Ex. 4).) So, on September 28, 2010, the Employees served a document request seeking "[a]ll Documents generated since August 1, 2005, relating to 'audits' or 'testing' of OMEGA output . . . ." [1]

On November 2, 2010 – almost <u>nine months</u> after the Employees sought "[d]ocuments related to any efforts to fix, review, maintain, patch, upgrade, replace, and/or update the Omega System" – HP confirmed an internal audit of Omega took place in 2009. *See* Martinez Decl. HP finally did so by including several documents about this internal audit (the "Audit") on HP's Second Privilege Log (served November 2nd). (Martinez Decl. (Ex. 5).) Still, HP refused to produce responsive audit documents. (*Id*.) HP's position lead Employees' counsel to file a letter with this Court.

When asked about the Audit during a subsequent telephonic hearing, HP's counsel confirmed that a notice relating to the Audit "went out in April 2009." (*Id*.)  And, just as important, the Audit was commenced for internal - business - reasons. (*Id*.)  Notably, no legal counsel was involved in the decision to commence the Audit. (*Id*.)  Months later – after a reporter contacted HP about Omega's problems – outside legal counsel brought in on the Audit. (*Id*.)  HP claims, nonetheless, that the Audit is protected because it was eventually conducted "under the direction" of counsel.  As explained below, HP's position is untenable.

**B.     Employees' Efforts to Obtain Discovery Regarding HP's Claim Employees Are Not Owed Anything**

During the Parties' Rule 26 conference, HP's counsel affirmatively represented that HP had looked into whether the Employees were owed anything. (*Id*.)  HP's counsel claimed the Employees were owed nothing. (*Id*.)  After the hearing on HP's first motion to dismiss, HP's counsel again represented that HP had determined the Employees were not owed anything. (*Id*.)

On February 23, 2010, Employees served at least three discovery requests on this issue (*Id*.):
- "Explain and describe all efforts . . . since the notice of this litigation to determine

---

[1] It is possible there were two separate audits in 2009, one with Ernst and Young, and one internal to HP to assess problems with Omega. Plaintiffs are unable to determine from HP's privilege logs if there are two separate audits.

3
Plaintiffs' Motion to Compel
Case No. 3:09-cv-003596-CRB, *Johnson, et al., v. Hewlett Packard Co.*

whether or not any of the named Plaintiffs . . . were owed commissions or bonuses." Interog. 7.

- "Identify and describe any efforts by HP to calculate wages, commissions, and/or bonuses owed to past or present employees as part of a window of correction, or other voluntary analysis or adjustment of wages (related to the Omega system) . . . ." Interrog. 9.

- Produce "[a]ll Documents related to HP's efforts since it received notice of this lawsuit to identify any Commissions or Bonuses owed to any current or former HP employee, including Documents created as a result of any such search . . . ." RFP 14.

HP never provided the requested information. (*Id*.)  After meet and confer efforts, the Employees decided to lodge even more specific requests. The Employees asked (*Id.*):

> If HP contends that any of the named Plaintiffs were fully compensated for their sales at HP, then describe in detail how You can or plan to prove that contention, including within Your answer: how You calculated the sales for which each Plaintiff was paid; the date(s) and amount(s) of all sales by each Plaintiff since August 1, 2005; the amount(s) credited by HP to each Plaintiff for each sale; the Bates number of each Document that You either produced or are relying upon to make this contention; and the Bates numbers of all Documents that comprise the "data we received for any Colorado employees" as referenced in page 48 of Becky Kidd's deposition transcript." 'Rog 18.

> Walk through and describe (with references to any Documents produced, if applicable), in detail, how HP intends to establish (in motions, depositions and/or at trial) that the named Plaintiffs were in fact paid all amounts claimed in the Third Amended Complaint (i.e., that HP paid all wages, commissions, etc.). Include in Your detailed response all calculations made to establish that there was payment in full.  'Rog 22

HP has never answered these interrogatories.[2]  *See* Martinez Decl.  Instead, HP claims the Employees were attempting to discover HP's legal strategy and work product (*Id*.):

> Defendant objects to this interrogatory on the ground that it implicitly relies on the erroneous legal conclusion that Defendant has the burden to "prove" that Plaintiffs were "fully compensated for their sales at HP." Defendant has no reason to believe that Plaintiffs were not paid all of their earnings. Plaintiffs have the burden of proof on all of their claims involving their contention that they were not "fully compensated." Defendant's "plan" is to defend against the evidence and arguments presented by Plaintiffs.  Defendant objects to this interrogatory on the ground that the phrasing of it ("how you plan to prove that contention ... ") calls for attorney work product by expressly seeking Defendant's counsel's trial strategy rather than simply asking whether Plaintiffs were paid properly and why

---

[2] HP also never responded to Interrogatory 23 which asks HP to identify those involved and with knowledge of the information provided in Interrogatory 22.  This motion also seeks a response to Interrogatory 23.

4
Plaintiffs' Motion to Compel
Case No. 3:09-cv-003596-CRB, *Johnson, et al., v. Hewlett Packard Co.*

Defendant believes that to be true or not. Defendant objects to this interrogatory on the ground that it asks how Defendant "plans" to prove any contention that Plaintiffs were "fully compensated" and then attempts to impose Plaintiffs' theory of the case on Defendant by seeking "the date(s) and amount(s) of all sales by each Plaintiff since August 1, 2005; the amount(s) credited by HP to each Plaintiff for each sale ...." Plaintiffs are not entitled to dictate how Defendant will choose to formulate its defense in this case. Defendant also objects on the ground that Plaintiffs' service of joint interrogatories from all Plaintiffs and inclusion of multiple subparts is an attempt to circumvent the 25-interrogatory limit under Fed. R. Civ. P. 33(a)(1). The interrogatory asks for individualized information about each of the five named Plaintiffs in what purports to be a single interrogatory. Further, it contains multiple discrete Sub-parts: (1) "describe in detail how You can or plan to prove that contention"; (2) "how You calculated the sales for which each Plaintiff was paid"; (3) "the date(s) and amount(s) of all sales by each Plaintiff since August 1,2005"; (4) "the amount(s) credited by HP to each Plaintiff for each sale"; (5) "the Bates number of each Document that You either produced or are relying upon to make this contention"; (6) and "the Bates numbers of all Documents that comprise the 'data we received for any Colorado employees' as referenced in page 48 of Becky Kidd's deposition transcript." Subject to and without waiving the foregoing objections, Defendant responds as follows: Defendant objects to this interrogatory on the ground that, in addition to seeking attorney work product, it is a premature contention interrogatory. *See, e.g., In re Convergent Technologies Securities Litigation,* 108 F.R.D. 328 (D.C. Cal. Oct. 28, 1985); *In re eBay Seller Antitrust Litigation*, 2008 WL 5212170 at *2 (N.D. Cal. Dec. 11,2008).

Response to 'Rog 18.

Defendant objects to this interrogatory on the ground that it implicitly relies on the erroneous legal conclusion that Defendant has the burden to prove that Plaintiffs "were in fact paid all amounts claimed" in the lawsuit. Defendant has no reason to believe that Plaintiffs were not paid all of their earnings. Plaintiffs have the burden of proof on all of their claims involving their contention that they were not "paid all amounts" that they claim they are owed. Defendant "intends to establish" that it is not liable to Plaintiffs by defending against the evidence and arguments presented by Plaintiffs. Defendant further objects on the ground that the framing of this interrogatory as a request for Defendant to describe how, "in motions, depositions and/or trial," it intends to "establish ... that the named Plaintiffs were in fact paid all amounts" claimed in Plaintiffs' lawsuit calls for attorney work product by expressly seeking Defendant's counsel's litigation and trial strategy. Defendant also objects on the grounds that Plaintiffs' service of joint interrogatories from all Plaintiffs is an attempt to circumvent the 25-interrogatory limit under Fed. R. Civ. P. 33(a)(1). The interrogatory asks for individualized information about each of the five named Plaintiffs in what purports to be a single interrogatory. To the extent that this Interrogatory is not objectionable for the reasons above, it is duplicative of Interrogatory No. 18.

1 Response to 'Rog 22.

2 Notwithstanding, HP has repeatedly represented the Employees are not owed anything
3 because HP has looked and found nothing. These two interrogatories, and the three document
4 requests submitted ten months ago, all seek the same information: *what did HP look at and how did*
5 *HP determine Plaintiffs are not owed anything?* The Employees are simply asking HP to describe
6 how it can calculate they are not owed any commissions. This will allow the Employees to
7 determine what information HP has not supplied it in discovery. Furthermore, to credibly and
8 accurately assert the Employees are owed nothing, HP had to examine specific data: 1) sales the
9 Employees actually made; 2) all sales for which the Employees received credit; 3) all manual
10 claims the Employees made; and 4) all sales made to the Employees' customers or in their
11 territories. And the information and data HP examined in order to represent that the Employees
12 were owed nothing is entirely *factual.*

## ARGUMENT

### I. THE AUDIT, AND DOCUMENTS CONCERNING THE AUDIT, ARE NOT PROTECTED FROM DISCLOSURE.

15 HP's Second Privilege Log (served just three weeks ago) is thirty-three pages long and lists
16 346 new documents. *See* Martinez Decl. Every single document listed claims to be protected from
17 disclosure by both the attorney-client privilege and the work product doctrine. (*Id.*) Neither the
18 privilege nor the work product doctrine applies. (*Id.*)

19 The privilege and work product do not apply because the information the Employees seek is
20 factual. HP's espoused view of the attorney-client privilege and work product doctrine vastly
21 exceeds the legitimate scope of any privilege or immunity. As the Ninth Circuit recently explained:
22 "[T]he attorney-client privilege does not 'create a broad "zone of silence" over' the subject matter of the
23 communication. 'The privilege only protects disclosure of [the] communications [themselves]; it does
24 not protect disclosure of the underlying facts,' so long as the underlying facts can be proven without
25 resort to the privileged materials." *Murdoch v. Castro*, 609 F.3d 983, 995 (9th Cir. 2010) (quoting
26 *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)). Similarly, the work product doctrine "does not
27 protect facts concerning the creation of work product or facts contained within work product."

SCHNEIDER WALLACE
COTTRELL BRAYTON
KONECKY LLP

*Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995).

The information the Employees seek, and HP is trying to conceal, is purely factual. *See* Martinez Decl. HP performed an internal audit to determine what was wrong with Omega and how to fix it. What actually is wrong with Omega and how it can be fixed are matters of pure fact. They do not represent the thoughts, strategy, or communications of counsel. (And any such thoughts or communications could – as this Court highlighted in the November 19, 2010 hearing – be redacted leaving the underlying facts, calculations and synopses.) <u>In sum, the reason for the Audit – if devised by an attorney (which it was not) – may be privileged or considered work product. The results of the audit are not</u>. Even a cursory review of the Second Privilege Log confirms that neither the privilege nor work product doctrine apply because no attorney was involved in creating or receiving the vast majority of the documents listed. *See* Martinez Decl. Only 78 of the 346 documents listed in the privilege log identify an attorney as an author or recipient. (*Id*.) Thus, the privilege does not apply to 268 of the documents. *See Oakely, Inc. v. Bugaboos Eyewear Corp.*, 2010 WL 4117223 (S.D. Cal. Oct. 15, 2010). In many instances when an attorney is a recipient, the attorney is one of several persons carbon copied. HP cannot create a privilege simply by including an attorney on an email. *See IP Co., LLC v. Cellnet Technology, Inc.*, 2008 WL 3876481, 2008 U.S. Dist. LEXIS 79776 (N.D. Cal. Aug. 18, 2008). With respect to the Audit itself, HP asserts that Robert J. Smith in Morgan, Lewis & Bockius LLP's Washington D.C. office, "became involved in the audit" in July 2009, the same time that work began on the Audit. (HP's Response to the First Letter at 1 (November 16, 2010).) Yet not a single document, e-mail, letter, or memorandum by, to, or from Smith is contained on the Second Privilege Log during May, June, July, or August 2009. Thus, according to the Second Privilege Log, Smith was the invisible lawyer, involved in an audit but leaving no paper or electronic trail. The Audit documents are simply not privileged because no attorney was involved and these documents must be produced. Mr. Smith was invisible, in part, because most of the documents HP is trying to keep secret were created before this litigation began, thus precluding the work product doctrine from applying. *See Lewis v. Wells Fargo & Co.*, 226 F.R.D. 433, 439-40 (N.D. Cal. 2010). Of the documents listed in HP's Second Privilege Log, 185 were created <u>before this case was filed</u>

7
Plaintiffs' Motion to Compel
Case No. 3:09-cv-003596-CRB, *Johnson, et al., v. Hewlett Packard Co.*

on August 6, 2009. *See* Martinez Decl. With respect to the Audit documents, HP asserts that "work on the [A]udit began in late July 2009," (*id.* at 2), but HP's documents, HP's counsel's own admissions in the November 19, 2010 hearing, and the privilege log itself prove the Audit started much earlier.

Notably, HP has produced a document, a presentation given by HP personnel showing that HP completed the Audit before July 2009, when Robert J. Smith supposedly "became involved in the audit." *See* Martinez Decl. The presentation discusses an audit of Omega and the inaccuracy of Omega. (*Id.*) Though the presentation is not dated, context shows it was likely done on June 19, 2009 because Father's Day is mentioned, which was June 21, 2009. (*Id.*) The presentation further states the Audit was completed, and Omega was re-opened, the week before, which was the week of June 8, 2009. (*Id.*) Assuming HP's outside counsel did in fact become involved in July 2009, that was well after the Audit was completed.

HP's counsel has all but admitted the Audit is not privileged or work product. During the November 19, 2010 telephonic hearing with the Court, HP's counsel stated that a notice went out in April 2009 about the Audit. (*Id.*) HP's counsel also admitted the Audit was commenced for internal, business reasons and that those involved in initiating the Audit had not consulted with HP's legal department before sending out the notice. (*Id.*) In fact, the only reason Mr. Smith became involved was because on June 4, 2009 – likely after the Audit was complete, at least according to HP's own documents – a reporter from the Wall Street Journal called HP. (*Id.*)

The (second) privilege log produced by HP also supports that the Audit was initiated if not complete before July 2009. (*Id.*) The privilege log alleges that documents created in March and April 2009 are "email[s] involving analysis prepared as part of a privileged internal audit." (Privilege Log dated 11/02/2010, at pp. 8-9 (Nos. 93, 95, 96, 99.) This shows that "work on the audit began" well before "late July 2009 . . . ." (HP's Response to the First Letter at 2.)

The Audit documents are not privileged or protected by the work product doctrine because they are factual, no attorney was involved, and they were created before this litigation began. Moreover, HP has waived any privilege or work product doctrine claim because it failed to even

SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP

produce a privilege log until long after the documents were collected or produced. On November 2, 2010 – more than eight months after HP first received discovery requests, HP produced its first substantive privilege log listing 346 allegedly privileged and work product documents. The blanket assertion of both privilege and work product eight months after discovery fails. "[B]oilerplate objections or blanket refusals inserted into a response to a [Fed. R. Civ. P.] 34 request for production of documents are insufficient to assert a privilege." *Burlington Northern & Santa Fe Railway Co. v. United States District Court for the District of Montana*, 408 F.3d 1142, 1149 (9th Cir. 2005). The 30-day time limit to respond to requests for production of documents set forth in Fed. R. Civ. P. 34 is a good guideline to establish when a privilege log must be produced. When a privilege log "was filed five months" after discovery responses, the privilege was waived. *Id.* In this case, the delay was more than seven months after Rule 34's 30-day default guideline. Thus, HP waived any privileges or immunities.

## II. HP's CLAIM ITS CALCULATIONS AND THE FACTUAL INFORMATION IT REVIEWED TO DETERMINE THE EMPLOYEES ARE ALLEGEDLY OWED NOTHING MUST BE PRODUCED

HP has repeatedly represented that it determined the Employees are not owed any commissions or other wages. *See* Martinez Decl. Plaintiffs' first set of discovery asked HP to describe its efforts to make this determination, including what HP did "to determine whether or not any of the named Plaintiffs or any other current or former HP employees were owed Commissions or Bonuses." Through the meet and confer process, the Employees refined this request, ultimately asking HP, in Interrogatory 18, to describe how it calculated sales it paid the Employees for; the dates and amounts of all sales by the Employees; and amounts HP credited to each Employee for each sale. Interrogatory 22 asked HP to describe how HP will establish that the Employees were paid all amounts claimed and to provide all calculations that establish such payment. (Martinez Decl. (Ex. 6).)

HP simply refuses to respond to these Interrogatories. *See* Martinez Decl. (Ex. 7). Though the information sought is critical and factual, and should be produced. The Employees seek documents and information HP allegedly used to determine the Employees are not owed anything.

HP's refusal to provide the information on grounds of privilege and work product is an abuse of the privilege and work product doctrines as neither can be used as both a sword and a shield. *Chevron Corp. v. Pennzoil Co.* 974 F.2d 1156, 1162 (9th Cir. 1992). HP will surely defend class certification or move to dismiss the Employees' claims on the ground that they are not owed anything and thus either have no claim or cannot represent the class. In order to overcome HP's defenses and establish their claims, the Employees need the information HP used to come to its conclusion, thus the information is critical.

The information sought is not the thoughts or communications of counsel. The data HP used to make its determination, and the calculations performed using such data, are facts in this case, not protected counsel communications or advice. *See Murdoch*, 609 F.3d at 995; *Resolution Trust Corp.*, 73 F.3d at 266. Accordingly, the information must be produced.

WHEREFORE, Plaintiffs request the Court enter:

1. An expedited ruling that documents constituting or concerning HP's audits, including any and all audits in the first half of 2009, are discoverable unless the document (a) expressly states that it is from HP's outside or inside counsel ("counsel"); (b) refers to advice from counsel, and explicitly states that the advice was given by counsel; (c) is sent to counsel directly and individually, and not as one person listed in a string of carbon copies; and/or (d) expressly requests advice from counsel and specifically identifies the questions or issues for which counsel advice is given.

2. An expedited ruling that HP has waived any claim of privilege or immunity for documents constituting or concerning the audit or audits that HP did not list on its July 30, 2010 privilege log; or alternatively, a ruling that HP has waived any claim of privilege or immunity for documents constituting or concerning any audits that were not listed on its November 2, 2010 privilege log (descriptions of which were updated on November 15, 2010).

3. An expedited ruling that Plaintiffs have shown substantial need for documents constituting or concerning HP's audit(s); and

4. An order directing HP to respond to Interrogatories 18 and 22 within five (5) days of this court's order.

5. An order finding that HP's delay in producing a privilege log identifying documents for which it was claiming privilege or immunity constitutes a waiver of any such claim of privilege.

In the alternative to 1, 2, 3, and 5 above, the Employees request that the Court conduct an *in camera* review of documents for which HP has claimed protection from disclosure.

Respectfully submitted,

Date:  November 24, 2010         FRANKLIN D. AZAR & ASSOCIATES, P.C.

GRADY SCHNEIDER, L.L.P.

SCHNEIDER WALLACE COTTRELL BRAYTON KONECKY LLP

_*/s/*_____
RICHARD P. BARKLEY
Counsel for Plaintiffs